UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MARIO WASHINGTON, individually and on
behalf all others similarly situated,

                            Plaintiff,

    - against -

MONSANTO COMPANY, a Delaware
corporation; DOES 1-10, inclusive,

                         Defendants.

---------------------------------------------------------------X

Case No.

**CLASS ACTION
COMPLAINT**

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, MARIO WASHINGTON, by and through his counsel, brings this Class Action Complaint on behalf of himself and all others similarly situated against Defendant, Monsanto Company and its wholly owned subsidiaries (collectively, "Monsanto" or "Defendant"), regarding the deceptive labeling, marketing, and sale of retail Roundup® "Garden Weeds" Weed & Grass Killer products ("Roundup" or "Roundup Products") and alleges the following based upon information, belief, and the investigation of his counsel:

1.     Defendant actively advertises and promotes its Roundup Products as targeting an enzyme "found in plants but not in people or pets." *See*, **Exhibit A**, annexed hereto. These claims are false, misleading and deceptive.

2.     The active ingredient in the Roundup Products at issue is glyphosate. Contrary to Defendant's claims, the enzyme that glyphosate targets *is* found in people and pets. Therefore,

where Defendant advertises that the Roundup Products target an enzyme "not found in people or pets," such claim is objectively false and inherently misleading.

3.      As such, Plaintiff brings this claim against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Roundup Products for violating New York's General Business Law §§ 349 and 350. Plaintiff seeks an order requiring Defendant to pay compensatory damages and restitution to Plaintiff and Class members.

## INTRODUCTION

4.      Glyphosate, the active ingredient in Monsanto's Roundup, is a biocide also regarded as the most commonly used herbicide in the world.

5.      Due to its prevalent use, glyphosate has contaminated the nation's water supply and many common food products. Some studies have reported glyphosate in more than 90% of the human population.

6.      Monsanto aggressively markets Roundup as safe for humans and animals, despite recent studies indicating that glyphosate may be carcinogenic and affect human and animal cardiovascular, endocrine, nervous, and reproductive systems.

7.      Specifically, the label on many Roundup Products conspicuously states, "Glyphosate targets an enzyme found in plants but not in people or pets," and Monsanto has used this representation to build the Roundup brand and convince consumers that Roundup products do not target or affect humans and animals.

8.      The representation that "[g]lyphosate targets an enzyme found in plants but not in people or pets" is false, deceptive, and misleading, because the enzyme targeted by the glyphosate in Roundup, in fact, is found in people and pets.

9.      No reasonable consumer seeing these representations would expect that Roundup targets a bacterial enzyme that is found in humans and animals and that affects their immune health.

10.     By deceiving consumers about the nature and effects of Roundup, Monsanto is able to sell a greater volume of Roundup, and to command a higher price for Roundup.

11.     Consumers lack the scientific knowledge necessary to determine whether Roundup does in fact target an enzyme found in plants but not in people or pets, or to assess the health effects of Roundup in humans or animals.

12.     Reasonable consumers must and do rely on Monsanto to report honestly Roundup's effects on humans and animals and whether the enzyme it targets is found in people and pets.

13.     Monsanto affirmatively states that the enzyme targeted by glyphosate is not found in people and pets, and fails to disclose to consumers that the enzyme targeted by glyphosate, and the shikimate pathway it is designed to inhibit, is found in people and pets.

14.     Monsanto omits additional, material information that it knows, namely, that the enzyme targeted by glyphosate is found in people and pets, specifically in the beneficial bacteria upon which their gut and immune system rely.

15.     Monsanto intended for consumers, including consumers throughout the State of New York, to rely on its representations, and reasonable consumers did so rely. As a result of its false and misleading labeling, and omission of fact, Monsanto was able to sell Roundup to the general public of the State of New York and realize sizeable profits.

16.     Monsanto's false and misleading representations and omissions violate New York's General Business Law §§ 349 and 350.

17.     Because Monsanto's labeling and advertising of Roundup tend to mislead and are materially deceptive about the true nature of the product, Plaintiff brings this deceptive advertising case on behalf of the general public and seek equitable relief for the sale of Roundup Products in the State of New York.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over Plaintiff's class claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than Plaintiff and most Class Members.

19.     This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

20.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff s claims occurred in this District; and: (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## PARTIES

21.     Plaintiff is a resident of Queens County, New York, and brings this lawsuit on behalf of himself, as an individual, and on behalf of all other similarly situated persons in New York.

22.     Plaintiff has purchased the Roundup Products on several occasions over the past four years in reliance on Defendant's representations that the Roundup Products target an enzyme supposedly found only in plants.

23.     This representation was material to Plaintiff's decision to make the purchases. Plaintiff would not have purchased the Roundup Products or would have purchased alternative products in the absence of the representation.

24.     At all times mentioned herein, Defendant, Monsanto Company, was and is a Delaware corporation headquartered in St. Louis, Missouri, and a leading marketer of weed killer through retail stores nationwide. Monsanto was and is, at all relevant times, engaged in commercial transactions throughout the State of New York, including this judicial District, as well as internet sales.

25.     Monsanto manufactures and/or causes the manufacture of weed killer products, and markets and distributes the products in retail stores in the State of New York and throughout the United States. Defendant makes, markets, sells, and distributes products under various trademarks, including the Roundup name.

Upon information and belief, Defendant has caused harm to the general public of the District of Columbia.

26.     DOES 1 – 10 are herein sued under fictitious names; when their true names are known, Plaintiff will amend. Along with the named Defendant, each DOE Defendant is a proximate cause of Plaintiff's harm.

## FACTUAL ALLEGATIONS

27.     Plaintiffs bring this suit against Monsanto for compensatory relief under New York's General Business Law §§ 349 and 350 based on misrepresentations and omissions committed by Monsanto regarding Roundup. Monsanto falsely states on the Roundup label and website that "[g]lyphosate targets an enzyme found in plants but not in people or pets," when in fact glyphosate targets a bacterial enzyme that is found in people and pets.

**A.     Worldwide Use and Effects of Glyphosate**

28.     On information and belief, the synthetic biocide glyphosate is, by volume, the world's most widely produced herbicide.

29.     Glyphosate was invented by Monsanto, which began marketing the biocide in 1974 under the trade name Roundup, after DDT was banned from agricultural use.

30.     Monsanto manufactures and distributes certain formulations of glyphosate to farmers and other formulations of glyphosate to consumers, both under the Roundup trademark.

31.     By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate, and survive, high doses of the biocide. The introduction of these genetically engineered seeds enabled farmers more easily to control weeds on their crops.

32.     Glyphosate functions as a biocide by inhibiting the enzyme 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, disrupting the fifth of six enzymatic steps in the shikimate pathway, which processes aromatic amino acids in certain organisms. [1]

33.     Although humans and other mammals themselves do not have a shikimate pathway, the shikimate pathway is present in bacteria, including beneficial bacteria that inhabit the mammalian gut and are essential to overall health.[2] EPSP is therefore "found in . . . people [and] pets."

34.     Just like it inhibits EPSP synthase in weeds, the active ingredient in Roundup inhibits EPSP synthase in these human and pet gut bacteria, and just like it targets weeds, the active ingredient in Roundup targets the human and pet gut bacteria.[3]

35.     On information and belief, there are three routes of exposure through which biocides enter the body—ingestion, dermal absorption, and inhalation.

36.     On information and belief, the presence of glyphosate in the human and animal gut likely results from the ingestion of glyphosate residues on food caused by agricultural and general environmental use of the product, including household use by consumers who purchase retail

---

[1] Heike Hollander & Nikolaus Amrhein, The Site of the Inhibition of the Shikimate Pathway by Glysophate, 66 PLANT PHYSIOLOGY 823, (1980), available at http://www.plantphysiol.org/content/66/5/823.full.pdf; Glysophate: Mechanism of Action, Glyphosate Facts (June 19, 2013), http://www.glyphosate.eu/glyphosate-mechanism-action.

[2] Hermann, Klaus M., The Shikimate Pathway as an Entry to Aromatic Secondary Metabolism, 107 PLANT PHYSIOLOGY 7 (1995), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC161158/pdf/1070007.pdf; Jandhyala, S.M., et al., Role of the Normal Gut Microbiota, 21 WORLD J. OF GASTROENTEROLOGY 8787 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4528021/.

[3] Anthony Samsel & Stephanie Sneff, *Glyphosate's Suppression of Cytochrome P450 Enzymes and Amino Acid Biosynthesis by the Gut Microbiome: Pathways to Modern Diseases*, 15(4) ENTROPY 1416 (2013), http://www.mdpi.com/1099-4300/15/4/1416/htm.

Roundup Products. Consumers may also be exposed to glyphosate via dermal absorption when using the retail Roundup Products or contacting surfaces on which or near which glyphosate has been sprayed. Pets may be exposed to glyphosate by ingesting grass that has been treated with glyphosate, or contacting surfaces on which or near which glyphosate has been sprayed.

37.    The wider effects of glyphosate on the human immune system are beginning to become known. Nevertheless, this lawsuit does not seek compensation for personal injury or any health effects of glyphosate. Instead, this lawsuit seeks compensatory and injunctive relief on behalf of the general public in the State of New York for Monsanto's violations of New York's General Business Law §§ 349 and 350.

## B.    Monsanto's Misrepresentation and Omission of Material Fact

38.    Consumers are becoming increasingly aware of biocides in the environment and concerned about their potential effects on people and animals.[4]

39.    Monsanto is aware of these concerns,[5] and knows that consumers are more likely to buy—and will pay more for—weed killers that they believe do not affect people and animals.

40.    To sell more Roundup, and to command a high price, Monsanto markets Roundup

---

[4] *See, e.g., Glyphosate to be Listed under Proposition 65 as Known to the State to Cause Cancer*, OEHHA (Mar. 28, 2017), *available at* https://oehha.ca.gov/proposition-65/crnr/glyphosate-be-  listed-under-proposition-65-known-state-cause-cancer; *Two-Thirds of Europeans Support Glyphosate Ban, Says Yougov Poll*, THE GUARDIAN (Apr. 11, 2016), *available at* https://www.theguardian.com/environment/2016/apr/11/two-thirds-of-europeans-support-ban-  on-glyphosate-says-yougov-poll; *Fears Over Roundup Herbicide Residues Prompt Private  Testing*, WASHINGTON  POST  (Apr.  13,  2015),  *available  at* https://www.washingtonpost.com/national/health-science/worries-about-an-ingredient-in-widely-      used-lawn-herbicide-after-who-report/2015/04/13/f6b0a418-df8a-11e4-a1b8- 2ed88bc190d2_story.html.

[5]    *See,  e.g.,*  Eric  Sachs,  *Conversation  Questions  Regarding  Glyphosate*,  Monsanto, http://discover.monsanto.com/posts/conversation-questions-regarding-glyphosate/ (last visited Feb. 1, 2017).

Products with claims that their active ingredient, glyphosate, targets an enzyme found only in plants and not in people or pets.

41.     Monsanto has built Roundup's reputation by including this representation on many Roundup Products' labels, and by omitting the contrary fact that the enzyme targeted by glyphosate is found in people and pets. The omission is consistent across the Roundup Product lines and therefore, regardless of whether the representation appears on a specific bottle of Roundup, Monsanto is able to command higher prices, and to sell more volume, across the line of Roundup Products.

42.     Monsanto intends this claim to create the false and misleading impression among consumers that glyphosate has no effect on people or pets, or the beneficial bacteria found in their gut biomes, despite its knowledge of evidence to the contrary.

43.     Monsanto omits the material fact that peer-reviewed scientific research studies have shown that the enzyme targeted by glyphosate in fact is present in human and animal gut bacteria.

44.     Monsanto's conduct in labeling and marketing Roundup as targeting an enzyme found only in plants (and thereby only affecting plants, not humans or animals) deceives and/or is likely to deceive the public.

45.     Consumers have been deceived into believing that Roundup targets an enzyme found only in plants and not in people or pets.

46.     Consumers cannot discover the true nature of Roundup from reading the label. Should any consumer visit Monsanto's website seeking additional information, the website

purports to include various "background materials" on glyphosate[6] but still does not mention that the enzyme targeted by Roundup is present in bacteria integral to the gut and immune system of people and pets.

47.     Discovery of the true nature of Roundup requires knowledge of and access to a laboratory for testing or research that is not available to the average reasonable consumer.

48.     Monsanto deceptively and misleadingly conceals material facts about Roundup, namely, that Roundup targets a bacterial enzyme found in people and pets.

49.     Monsanto's concealment tolls the applicable statute of limitations.

50.     To this day, Monsanto continues to conceal, suppress, and misrepresent the true nature of Roundup.

## C.     Monsanto's Knowledge That Its Representations Are False

51.     Monsanto holds itself out to the public as a trusted expert in herbicides.[7]

52.     Monsanto is aware of how glyphosate works on the shikimate pathway,[8] and on information and belief is aware of studies showing that the shikimate pathway is present in bacteria integral to the digestive systems of people and pets.

53.     Monsanto therefore knows that glyphosate targets an enzyme present not only in plants, but also in people and pets.

---

[6] *Roundup/Glyhosate Background Materials*, Monsanto, http://www.monsanto.com/products/pages/roundup-safety-background-materials.aspx.

[7] *See, e.g.*, *id.*

[8] *Id.*

54.     Monsanto knows what representations it makes on the labels of Roundup.

55.     Monsanto thus knew all the facts demonstrating that Roundup Products with the representation "targets an enzyme found in plants but not in people or pets" were mislabeled and falsely advertised, and knew that a material fact was omitted from the label of all Roundup Products.

**D.     Consumers' Reliance on Monsanto's False and Misleading Representations**

56. Consumers frequently rely on label representations and information in making purchase decisions.

57.     Monsanto made false, misleading, and deceptive representations and omissions intending for consumers to rely upon these representations and omissions in purchasing Roundup.

58.     In making the false, misleading, and deceptive representations and omissions at issue, Monsanto knew and intended that consumers would purchase Roundup when consumers would otherwise purchase a competing product or not purchase at all.

59.     Consumers are willing to pay more for a weed killer product that purports to target an enzyme found only in plants, and they expect that product to not target an enzyme found in, or to affect, people and pets.

60.     In making the false, misleading, and deceptive representations and omissions at issue, Monsanto also knew and intended that consumers would pay more for weed killer products that do not target an enzyme found in, or affect, people and pets, furthering Monsanto's private

interest of increasing sales of Roundup and decreasing the sales of competing weed killer products that are truthfully marketed.

61.     Monsanto has failed to provide adequate relief to members of the consuming public as of the date of the filing of this Complaint.

62.     Reasonable consumers do not expect Roundup, which Monsanto represents and advertises as targeting "an enzyme found in plants but not in people or pets," to target an enzyme found in humans and animals, on which they depend for overall health.

63.     Monsanto's statements and other representations convey a series of express and implied claims and/or omissions that Monsanto knows are material to the reasonable consumer in making a purchasing decision, and that Monsanto intended for consumers to rely upon when choosing to purchase Roundup.

64.     Monsanto misrepresented the nature of Roundup and/or failed to adequately disclose the fact that Roundup's key ingredient targets an enzyme found in the gut bacteria of people and pets, which was and is false, misleading, and/or likely to deceive reasonable consumers.

## CLASS ALLEGATIONS

65.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

66.     This action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

67.     The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

> All persons who purchased the Roundup Products within the State of New York from the beginning of any applicable limitations period through the date of class certification ("the Class").

68.     Excluded from the Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

69.     Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

70.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

71.     All members of the Class were and are similarly affected by the deceptive advertising of the Defendants, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

72.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

73.     **Numerosity – Federal Rule of Civil Procedure 23(a)(l).** At this time, Plaintiff does not know the exact number of the Class members. Based on the annual sales and popularity of the Product, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

74.     **Commonality and Predominance –Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a.      Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive and/or misleading;

b.      Whether Defendants' practices and representations related to the marketing, labeling and sales of the Roundup Products were unfair, deceptive, fraudulent, misleading and/or unlawful in any respect, thereby violating New York law;

c.      Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

d.      Whether Defendants' claim that "[g]lyphosate targets an enzyme found in plants but not in people or pets" is true or false or likely to deceive or mislead a reasonable consumer;

e.      Whether Defendants violated New York General Business Law § 349;

f.      Whether Defendants violated New York General Business Law § 350; and

g.      The nature of the relief to which Plaintiffs and the Class members are entitled.

75.     **Typicality - Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the Class, as the claims arise from the same course of conduct by Defendants,

and the relief sought within the Class is common to the Class members. Plaintiff, like all members of the Class, relied on Defendants' false and misleading representations and purchased the Roundup Products, or paid more for the Roundup Products, than Plaintiff would have paid if the Roundup Products had been properly labeled, and sustained injury from Defendants' wrongful conduct. Further, there are no defenses available to Defendant that are unique to Plaintiff.

76.     **Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

77.     **Insufficiency of Separate Actions - Federal Rule of Civil Procedure 23(b)(l).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(l).

78.    **Predominance and Superiority of Class Action.** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

79.    Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

80.    Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

81.    Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

### FIRST CAUSE OF ACTION
**(Violation of New York General Business Law § 349)**

82.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

83.     Defendant, in selling Roundup Products in the State of New York, was engaged in a consumer-oriented business practice or act.

84.     Monsanto's labeling and advertising of Roundup misrepresents, tends to mislead, and omits material facts regarding the nature of Roundup.

85.     Monsanto has labeled and advertised Roundup as targeting "an enzyme found in plants but not in people or pets," and has otherwise presented an image and marketing materials suggesting that Roundup does not target an enzyme in, or affect, humans and animals.

86.     The representations omit the truth about Roundup, namely, that its active ingredient, glyphosate, targets a bacterial enzyme found in humans and animals, which they depend on for overall health.

87.     Roundup lacks the characteristics, benefits, styles and standards that Monsanto states and implies in its labeling and advertisements.

88.     These misstatements, innuendo, and omissions are material and have the tendency to mislead.

89.     Monsanto knowingly did not sell Roundup as advertised.

90.     Consumers were in fact deceived and mislead. Monsanto knew or should have known that because of its misrepresentations, reasonable consumers would believe that Roundup does not target a bacterial enzyme in humans and animals, which they depend on for overall health.

91.     Because Monsanto misrepresents the characteristics, ingredients, and benefits of Roundup; misrepresents the standard, quality, and grade of Roundup; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about Roundup; and advertises Roundup without the intent to sell it as advertised; Monsanto's labeling and marketing of Roundup violates New York General Business Law § 349.

92.     Defendants have violated, and continue to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful.

93.     As a direct and proximate result of Defendants' violation of § 349, Plaintiff and other members of the Class have suffered damages in an amount to be determined at trial.

94.     Pursuant to New York General Business Law § 349, Plaintiff seeks an order of this Court that includes, but is not limited to, enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

95.     Plaintiff and the other members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

96.     The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and the other members of the Class.

THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### (Violation of New York General Business Law § 350)

97.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

98.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

99.     New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

100.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

101.    Plaintiff and the members of the Class are consumers who purchased the Roundup Products in New York.

102.    As sellers of goods to the consuming public, Defendants are engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

103.    Defendants' representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendants' advertising fails to reveal material facts with respect to the Roundup Products, as described above, constitute false advertising in violation of the New York General Business Law.

104.    Defendants' false advertising was knowing and intentional.

105. Defendants' actions led to direct, foreseeable and proximate injury to Plaintiff and the Class.

106. As a consequence of Defendants' deceptive marketing scheme, Plaintiff and the other members of the Class suffered an ascertainable loss, insofar as they would not have purchased the Roundup Products had the truth been known, or would have purchased the Roundup Products on different terms, or would otherwise purchase a competing product, and as a result of Defendants' conduct, they received a product of less value than what they paid for.

107. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for actual damages or five hundred dollars ($500) for each sale of the Roundup Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

108. Plaintiff and the other members of the Class further seek to enjoin the false advertising described above.

109. Absent injunctive relief, Defendants will continue to deceptively market the Product.

THEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class providing such relief as follows:

A.       Certification of the Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as representative of the Class; and appointment of his undersigned counsel as counsel for the Class;

B.       A declaration that Defendants are financially responsible for notifying members of the Class of the pendency of this suit;

C.       An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein;

D.       Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment and post-judgment interest at the maximum rate allowable by law;

E.       Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 349 and common law, enjoining Defendants' unlawful and deceptive acts;

F.       Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

G.       Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H.       Such further relief as this Court may deem just and proper.

## JURY TRIAL
## DEMANDED

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED: April 12, 2017

**GABRIELLI LEVITT LLP**

Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Attorneys for Plaintiff and Proposed Class*

## **VERIFICATION**

STATE OF NEW YORK    )
                             ) ss.:
COUNTY OF QUEENS     )

      MARIO WASHINGTON, being duly sworn, deposes and says that I am a Plaintiff herein, have read this lawsuit and am familiar with the allegations, which are true to my own knowledge, except as to those matters stated therein to be alleged on information and belief, and as to those matters, I believe them to be true.

      Attached hereto as Exhibit A are a true and correct photographs of the challenged advertising statement, which, upon information and belief, appears on Defendant's labels throughout New York State.

      I declare under penalty of perjury under the laws of the State of New York that the foregoing is both true and correct.

                                   Mario Washington

Sworn to before me
this 11th day of April, 2017.

Notary Public

IRIS M. GABRIELLI, ESQ.
Notary Public, State of New York
No. 02GA6171652
Qualified in Nassau County
Commission Expires July 30, 2011
2019